IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CV 24-33-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| TAYLN LANG, HEIRLOOM REMEDIES, and HEIRLOOM CURIOSITIES, LLC, | |
| Defendants. | |

This matter comes before the Court Plaintiff United States of America's motion for default judgment against Defendants Tayln Lang, Heirloom Remedies, and Heirloom Curiosities, LLC. (Doc. 25). The motion is granted for the reasons outlined below.

## I.    **Factual and Procedural Background**

On March 18, 2024, the United States filed this action against Lang and his two businesses—a gift shop named Heirloom Curiosities, and a marijuana dispensary named Heirloom Remedies. (Doc. 1 at ¶¶ 5-6). The facts as alleged in the Complaint are as follows.

On May 4, 2021, Lang applied for an Economic Injury Disaster Loan

("EIDL") from the Small Business Association ("SBA") on behalf of his business, Heirloom Curiosities. (Doc. 1 at ¶¶ 32-34). Lang listed the "business activity" on the EIDL application as "retail" and "flea market," stated that the business had three employees, and listed gross receipts of $362,784.16 for fiscal year 2019 and $65,843.96 for fiscal year 2020. (Doc. 1 at ¶ 32). He checked the box on the application's "eligible entity verification" that "[a]pplicant is not engaged in any illegal activity (as defined by Federal guidelines)" and answered "no" to an eligibility question asking: "Is Applicant engaged in any illegal activity (as defined by Federal guidelines), including selling recreational or medical marijuana?" (Doc. 1 at ¶ 33).

Based on the representations in Lang's application, the SBA approved Heirloom Curiosities for an EIDL program loan of $66,000 on May 4, 2021. (Doc. 1 at ¶ 34). Lang electronically signed the Loan Authorization and Agreement that same day, certifying, among other things, that: "All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan." (Doc. 1 at ¶ 34).

Contrary to this certification, however, Lang's EIDL application included false statements. In actual fact, Lang reported the employees and gross income

from his marijuana dispensary, Heirloom Remedies, together with income from Heirloom Curiosities. (Doc. 1 at ¶ 35). Those false statements were material to the SBA. Had Lang reported the correct number of employees and gross income for just Heirloom Curiosities, or conversely, had he correctly identified that Heirloom Remedies was in the business of selling marijuana—which is prohibited by federal law—Heirloom Curiosities would not have received the $66,000 loan from the SBA. (Doc. 1 at ¶ 36).

On May 27, 2021, Lang applied for an SBA guaranteed Paycheck Protection Program ("PPP") loan through a third-party lender. (Doc. 1 at ¶ 38). On the application, Lang listed his "DBA or Tradename" as "Heirloom Remedies/Heirloom Curiosities, LLC," stated that his total gross revenue in 2019 was $215,093, and indicated that he had one employee. (Doc. 1 at ¶ 38). Lang responded "no" to a question asking: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?" (Doc. 1 at ¶ 39). And by signing the application, Lang certified that "[t]he Applicant is not engaged in any activities that is illegal under federal, state or local law." (Doc. 1 at ¶ 40).

Like his EIDL application, Lange's PPP application also contained false information that was material to the SBA. (Doc. 1 at ¶¶ 41-42). Specifically, the

gross revenue Lang reported on his PPP application was derived from his

marijuana business Heirloom Remedies. (Doc. 1 at ¶ 41). Had Lang correctly

reported this information, his PPP loan would not have been approved. (Doc. 1 at ¶

42).

Lang's application was approved for a PPP loan of $20,833 on May 31,

2021. The money was transferred to Lang's personal checking account on June 28,

2021. (Doc. 1 at ¶ 43). Lange applied for forgiveness of the PPP loan on

September 7, 2021, and certified on the application that he complied with all SBA

rules on eligible uses of the PPP loan proceeds, including the amount that must be

used for payroll costs. (Doc. 1 at ¶ 44). Lang also certified that the forgiveness

application was true and correct in all material respects. (Doc. 1 at ¶ 44). On

September 10, 2021, Lang's forgiveness application was accepted and the original

principal of $20,833 and interest of $43.95 were forgiven by the SBA. (Doc. 1 at ¶

45).

The United States filed its Complaint on March 18, 2024, seeking treble

damages and civil penalties for violations of the False Claims Act ("FCA"), 31

U.S.C. §§ 3729(a)(1)(A) (Count 1), and asserting claims for damages and other

monetary relief under common law theories of unjust enrichment (Count 2) and

payment by mistake (Count 3). (Doc. 1 at 13). On March 28, 2024, Lang executed

a waiver of service of summons on behalf of all Defendants and this document was filed with the Court on March 29, 2024. (Doc. 5). On November 11, 2024, the United States moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) based on the Defendants' failure to appear, plead, or otherwise defend the action. (Doc. 10). On November 19, 2024, the Clerk of Court entered default against Defendants. (Doc. 13).

On November 22, 2024, Lang filed an "Answer Pro Se" requesting "an opportunity to defend himself" against the allegations in the Complaint. (Doc. 15). In response to Lang's filing, the United States filed an unopposed motion to vacate the entry of default, which the Court granted on December 13, 2024. (Docs. 16, 17). The Court gave Defendants until January 13, 2025, to file a responsive pleading. (Doc. 17). Defendants failed to answer or otherwise appear, and on April 3, 2025, the United States file a second motion for entry of default. (Doc. 21). On April 4, 2024, the Clerk of Court again entered default against Defendants pursuant to Rule 55(a). (Doc. 23).

Defendants failed to answer or otherwise appear as required by Federal Rule of Civil Procedure 12(a)(1)(A) by the Court ordered deadline. On May 21, 2025, the United States filed the pending motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. 25). The United States asks the

Court to enter default judgment against Defendants Tayln Lang, Heirloom Remedies, and Heirloom Curiosities, LLC, jointly and severally, in the total amount of $312,651.10. (Doc. 25). As of the date of this Order, Defendants still have not answered, responded to, or otherwise defended against the allegations in the Complaint and Lang has made no further filings in the case.

## II.    Discussion

"The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A district court considering whether default judgment is appropriate should consider the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits." *State Farm Mut. Auto. Ins. Co. v. Croft*, 2019 WL 6311136, at *1 (D. Mont. Nov. 25, 2019) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"At this stage of the proceedings, well-pleaded factual allegations, except those related to damages, are deemed admitted and are sufficient to establish the unresponsive defendant's liability." *Grayson v. Midland Group & Associates, LLC*, 2025 WL 901677, at *2 (D. Mont. Mar. 25, 2025) (citing *Geddes v. United Fin.*

6

*Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). As to damages, "the amount claimed must be reasonable and substantiated by the plaintiff's evidence." *Grayson*, 2025 WL 901677, at *2 (citing Fed. R. Civ. P. 55(b); *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).

    **A.**    ***Eitel* Factors**

    The Court finds that the first *Eitel* factor, the possibility of prejudice to the plaintiffs, weighs in favor of granting default judgment. The United States explains that PPP loans were not secured with collateral, and the security interest on the EIDL loan at issue consists of collateral that is, at least in part, a controlled substance (marijuana) and related paraphernalia that has no value to the government because it is illegal under federal law. (Doc. 26 at 7-8). As alleged in the Complaint, the PPP and EIDL loans would not have been approved had Lang correctly reported the true nature of the Defendant businesses. (Doc. 1 at ¶¶ 36, 42). If default judgment is not entered, the possibility of prejudice is high because the government will be left without a means to recover the loan proceeds wrongfully obtained by Defendants.

    The second and third factors require consideration of the merits of the claims and the sufficiency of the complaint, *Eitel*, 782 F.2d at 1471, both of which weigh

in favor of entering default judgment. Taken as true, the allegations in the Complaint state a claim under Section 3729(a)(1)(A) of the FCA, which requires proof of the following elements: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012) (citation omitted).

As summarized above, the United States has pled facts establishing that Lang violated the FCA on behalf of himself and his companies by falsely certifying eligibility for both the EIDL and the PPP loans. First, Lang represented on the EIDL application for Heirloom Curiosities that it was a "retail" and "flea market" but included the gross of income and employees of Heirloom Remedies, his marijuana dispensary, and falsely answered "no" to an eligibility question asking whether the applicant was engaged in illegal activities, including selling recreational or medical marijuana. (Doc. 1 at ¶¶ 32, 33, 35; Doc. 26-1 at 5-11). Second, on the PPP application for "Heirloom Remedies/Heirloom Curiosities, LLC" Lang falsely certified that the applicant was not engaged in illegal activity under federal law and again reported gross revenue from the marijuana dispensary. (Doc. 1 at ¶¶ 40-41; Doc. 26-1 at 19-20).

8

Had Lang truthfully indicated on his EIDL application that he was including his marijuana business on the application or reported the correct employees and gross income for Heirloom Curiosities, he would not have received the loan. (Doc. 1 at ¶ 36). Likewise, had Lang truthfully stated on his PPP application that Heirloom Remedies was engaged in illegal activities, the loan would not have been funded. (Doc. 1 at ¶ 42). Based on the loan applications specifically excluding activity illegal under federal law—"including selling recreational or medical marijuana"—Lang knew, or should have known, that he was providing false statements and certifications on the loan applications. (Doc. 1 at ¶¶ 33, 40). Accordingly, the Court concludes that the well-pled allegations of the Complaint establish that Defendants violated the FCA. The second and third *Eitel* factors are thus satisfied.

The fourth *Eitel* factor considers the amount of money at stake weighed against the culpability of the defendant's conduct. *Croft*, 2019 WL 6311136, at *3. The FCA authorizes treble damages and civil penalties. 31 U.S.C. § 3729; 28 C.F.R. § 85.5. The United States seeks to recover $94,919.70 in principal amounts, interest and fees for the loans wrongfully obtained by Defendants, plus treble damages and civil penalties. (Doc. 26 at 8). Because the $94,919.70 in damages arises directly from Defendants' misconduct, and the treble damages and penalties

are statutorily authorized, they are reasonable and proportional to Defendants'

conduct. The fourth *Eitel* factor thus weighs in favor of default judgment.

The fifth and sixth factors—possible factual disputes and excusable

neglect—also favor entering default judgment. Because Defendants did not answer

the United States' Complaint, no facts are in disputes. *See PepsiCo, Inc. v.*

*California Sec. Cans.*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Defendants

were properly served, and although the Court granted Defendants additional time

to appear and defend against the United States' claims, they failed to do so. Nearly

eleven months have passed since the January 13, 2025, deadline for the Defendants

to respond to the Complaint, and there is nothing in the record to support a finding

of excusable neglect. Accordingly, the fifth and sixth *Eitel* factors also weigh in

favor of default judgment.

The final factor, the policy favoring a decision on the merits, generally

weighs against entering default judgment. *Eitel*, 782 F.2d at 1472. But this factor,

standing alone, is not dispositive. *See PepsiCo, Inc.*, 238 F.Supp.2d at 1177.

Because this factor is outweighed by all the other *Eitel* factors, and Defendants'

failure to appear makes it impossible for the Court to render a decision on the

merits, default judgment is appropriate.

**B.    Damages**

10

The party seeking default judgment "has the burden of proving damages through testimony or written affidavit." *Luxottica Group S.p.A. v. Thornton*, 2022 WL 216785 at *8 (C.D. Cal. May, 2, 2022) (citing *Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F.Supp.2d 1222, 1226 (N.D. Cal. 2005)). The Court may hold an evidentiary hearing to determine the amount of damages, but "no hearing is necessary 'if the amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits'." *Luxottica*, 2022 WL 2167685, at *8 (quoting *Bravado Int'l Grp. Merch. Servs., Inc. v. Quintero*, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013)); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings…when, to enter or effectuate judgment, it needs to…determine the amount of damages.").

The United States has submitted sufficient evidence to substantiate the amount of damages requested, including the declaration John Nielsen, a fraud investigator with the U.S. Attorney's Office in the District of Montana. (Doc. 26-1). As reflected in Nielsen's declaration and attached exhibits, the principal balance of the EIDL is $66,000.00, and the interest amount is $5,542.75, totaling $71,542.75. (Doc. 26-1 at 2 ¶¶ 2-3, 13-17). For the PPP loan, the principal forgiveness amount is $20,833.00, the interest forgiveness amount is $43.95, and

the PPP processing fee paid by the SBA is $2,500.00, totaling $23,376.95. (Doc.

26-1 at 2-3 ¶¶ 4-6, 40). The evidence thus establishes that the United States paid

Defendants a total of $94,919.70 as a result of Lang's false statements and

misrepresentations regarding the nature of his business activities.

Any person who violates the FCA is liable to the United States for three

times the amount of damages sustained by the government, plus a civil penalty of

$5,000 to $10,000 per violation, adjusted in accordance with the Federal Civil

Penalties Inflation Adjustment Act of 1990, as amended. (Doc. 26 at 12, citing 31

U.S.C. § 3729(a)(1)).

Under the FCA, Defendants are thus liable for three times the damages

amount of $94,919.70, which is $284,759.10. *See Cook County v. United States ex

rel. Chandler,* 538 U.S. 119, 132 (2003); *see also Fresenius Med. Care Holdings,

Inc. v. United states*, 2013 WL 1946216, at *6 (D. Mass. May 9, 2013) ("[T]he

government need only prove its single damages, after which multiple damages are

applied as a matter of course.").

For civil penalties assessed after February 12, 2024, whose associated

violations occurred after November 2, 2015, the civil penalty amounts range from

a minimum of $13,946 to a maximum of $27,894. (Doc. 26 at 13, citing 28 C.F.R.

§ 85.5.). The United States asks the Court to impose the minimum statutory

penalty of $13,946.00 for each of the two FCA violations, the first of which related to the EIDL loan and the second to the PPP loan. *See United States v. Mackby*, 221 F.Supp.2d 1106, 1110 (N.D. Cal. 2002) ("The Ninth Circuit and other federal courts have consistently found that civil penalty awards in which the amount of the award is less than the statutory maximum do not run afoul of the Excessive Fines Clause.").

Accordingly, the United States has satisfied its burden of establishing that pursuant to the FCA it is entitled to treble damages of $284,759.10 and two civil penalties totaling $27,892.00, for a total award of $312,651.10.

## III. Conclusion

For the reasons stated above, and good cause appearing,

IT IS ORDERED that the United States' Motion for Default Judgment (Doc. 25) is GRANTED. Default judgment is hereby entered in favor of the United States and against Defendants Tayln Lang, Heirloom Remedies, and Heirloom Curiosities, LLC, jointly and severally, in the total amount of $312,651.10. Interest shall accrue pursuant to 28 U.S.C. § 1961 until the judgment is paid in full.

DATED this 3rd day of December, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge

13